**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

IN RE: Chapter 11 Case

NIED OWNERSHIP LLC, Case No. 6:26-bk-3232-TPG

Debtor.
_______________________________/

**ACRE CFPORTFOLIO LLC'S RESPONSES AND OBJECTIONS TO NIED OWNERSHIP LLC'S FIRST SET OF INTERROGATORIES**

ACRE CFPORTFOLIO LLC ("ACRE"), by and through its attorneys, objects and responds to Nied Ownership LLC's (the "Debtor") First Set of Interrogatories (the "Interrogatories"), as follows:

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. ACRE objects to the definition of "Debtor" or "Nied" as overbroad and unduly burdensome because it includes an innumerable number of individuals and entities without regard to their connection or relevance to the relief sought by ACRE. ACRE further objects to the definition of "Debtor" or "Nied" as vague and ambiguous because it renders it practically impossible to identify what entities and persons are and are not included within the definition. ACRE will understand "Debtor" or "Nied" to refer solely to Nied Ownership LLC.

2. ACRE objects to the definition of "Creditor" or "ACRE" as overbroad and unduly burdensome because it includes an innumerable number of individuals and entities without regard to their connection or relevance to the relief sought by ACRE. ACRE further objects to the definition of "Creditor" or "ACRE" as vague and ambiguous because it renders it practically impossible to identify what entities and persons are and are not included within the definition. ACRE will understand "Creditor" or "ACRE" to refer solely to ACRE CFPORTFOLIO LLC.

3. ACRE objects to the definition of "JLL" as overbroad and unduly burdensome because it includes an innumerable number of individuals and entities without regard to their connection or relevance to the relief sought by ACRE. ACRE further objects to the definition of "JLL" as vague and ambiguous because it renders it practically impossible to identify what entities and persons are and are not included within the definition. ACRE will understand "JLL" to refer solely to JLL Capital Markets, a subsidiary of Jones Lang LaSalle Americas, Inc.

4. ACRE objects to the definition of "PIMCO" as overbroad and unduly burdensome because it includes an innumerable number of individuals and entities without regard to their connection or relevance to the relief sought by ACRE. ACRE further objects to the definition of "PIMCO" as vague and ambiguous because it renders it practically impossible to identify what entities and persons are and are not included within the definition. ACRE will understand "PIMCO" to refer solely to Pacific Investment Management Company LLC.

5. ACRE objects to the definition of "Rialto" as overbroad and unduly burdensome because it includes an innumerable number of individuals and entities without regard to their connection or relevance to the relief sought by ACRE. ACRE further objects to the definition of "Rialto" as vague and ambiguous because it renders it practically impossible to identify what entities and persons are and are not included within the definition. ACRE will understand "Rialto" to refer solely to FS Rialto 2021-FL3 Issuer, Ltd. and FS Rialto 2025-FL10 Issuer, Ltd.

6. ACRE objects to the definitions of "Communications," "Correspondence," and "Documents" as overbroad and unduly burdensome because they are inconsistent with Federal Rule of Civil Procedure 34(a)(1)(A) and purport to expand the definition of those words beyond the requirements of the Federal Rules of Civil Procedure. ACRE further objects to the definitions of "Communications," "Correspondence," and "Documents" to the extent they call for the

production of information that is available from other sources that would impose less burden and/or expense, or that is not proportional to the needs of the case. ACRE will understand "Documents" to encompass the "documents or electronically stored information" referenced in Rule 34(a)(1)(A), and "Communications" and "Correspondence" to mean an exchange of information, whether oral, written, or electronic.

7. ACRE objects to Instruction No. 14 as overbroad and unduly burdensome because it includes an innumerable number of individuals and entities without regard to their connection or relevance to the relief sought by ACRE. ACRE further objects to Instruction No. 14 as vague and ambiguous because it renders it practically impossible to identify what entities and persons are and are not included within the scope of any reference to a company or entity. ACRE will understand any reference to a company or entity to refer solely to the named entity itself.

8. ACRE objects to Instructions Nos. 10 through 17 to the extent they purport to impose duties that differ from or exceed those imposed by the applicable Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Middle District of Florida, or any other applicable order entered by the Court (collectively, the "Governing Rules"). ACRE will construe and respond to the Interrogatories in a manner consistent with its obligations under the Governing Rules.

9. ACRE expressly reserves its right to amend or supplement these responses and objections at a later date and is not waiving any response or right in any respect by responding and objecting to the Interrogatories.

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please identify the name and address of the person answering these interrogatories, as well as the person's official position or relationship with the party to whom the interrogatories are directed.

**RESPONSE TO INTERROGATORY NO. 1:**

ACRE objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, ACRE responds as follows: Jeff Goldstein, Director, Asset Management, ACRE Management LLC, 670 DeKalb Ave, Suite 100, Atlanta, Georgia 30312

**INTERROGATORY NO. 2:**

Please identify all persons (names and addresses) who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in the MTD and/or the Response specify the subject matter about which each such person has knowledge.

**RESPONSE TO INTERROGATORY NO. 2:**

ACRE objects to this Interrogatory on the grounds that it is wildly overbroad and unduly burdensome, in that the potential number of persons that might have knowledge "concerning" any issue in the MTD or Response likely numbers in the thousands. Even if limited just to persons working at ACRE, the Interrogatory remains overbroad and unduly burdensome, because any

number of employees only tangentially involved in the transaction at issue may have some knowledge (for example, secretaries).

Subject to and without waiving the foregoing objections, ACRE responds that the following two persons are most likely to have relevant information relating to the issues in the MTD and the Response:

- Jeff Goldstein, Director, Asset Management, ACRE Management LLC, 670 DeKalb Ave, Suite 100, Atlanta, Georgia 30312 and
- Nicholas Vega, Associate, Acquisitions ACRE Management LLC, 80 SW 8th Street, Suite 2600, Miami, FL 33130

**INTERROGATORY NO. 3:**

Please state (in detail) the factual basis (or bases) for ACRE's contention in Paragraph 13 of the MTD that it "undertook substantial efforts to preserve the value of the Portfolio and to engage constructively with the Debtor and the Niederst family."

**RESPONSE TO INTERROGATORY NO. 3:**

ACRE objects to this Interrogatory as the MTD speaks for itself and because the facts relating to the identified allegation are equally within the possession of the Debtor. ACRE also objects to the Interrogatory as unduly burdensome if construed to require ACRE to lay out every fact potentially relevant to that contention, or to specify all evidence and facts that the ACRE may raise at the hearing. ACRE further objects to this Interrogatory as a premature contention interrogatory, as it seeks information that is not appropriate or proportional for discovery at this point in the litigation. The Interrogatory's request for the factual basis supporting ACRE's MTD

while discovery is ongoing, written discovery and document production are not complete, and no depositions have been taken is premature and therefore not proper at this stage.

Subject to those objections, with respect to the "substantial efforts" to preserve the value of the Portfolio, as set forth in Paragraph 14 of the Motion to Dismiss, ACRE, among other things, negotiated and entered into three forbearance agreements (the "Forbearance Agreements") dated as of April 24, 2026 with Rialto, the mortgage lender for the mortgage loans in connection with the three separate properties that are part of the Portfolio (the "Loans"). Those Forbearance Agreements extended the Loans' respective maturity dates, obtained waivers of default interest and late charges, and delayed Rialto from exercising its contractual remedies. MTD ¶ 14. As consideration for Rialto's entry into those agreements, ACRE made protective advances to Rialto on April 24, 2026, in the aggregate amount of $30 million, which partially paid down Rialto's mortgage loans. *See id*. These actions all benefited the Debtor and preserved the value of the Portfolio for the benefit of all stakeholders.

With respect to ACRE's constructive engagement with the Debtor and the Niederst family, as set forth in Paragraph 13 of the Motion to Dismiss, among other things ACRE sent a customary pre-negotiation letter in March 2026, but the Niedersts declined to sign it or provide comments. ACRE thereafter provided a term sheet in April 2026 proposing a potential restructuring path, but that proposal likewise did not result in any engagement from the Niedersts. MTD ¶ 13. The Niedersts stonewalling and refusal to engage required ACRE to take steps to protect the Debtor's assets and its collateral ahead of the bankruptcy filing.

**<u>INTERROGATORY NO. 4</u>:**

Please state (in detail) the factual basis (or bases) for ACRE's assertion in Paragraph 15 of the MTD that the December of 2025 transfer of a parcel of real property was "fraudulent."

**<u>RESPONSE TO INTERROGATORY NO. 4</u>:**

ACRE objects to this Interrogatory on the ground that it seeks a legal conclusion (i.e., whether a particular transfer was "fraudulent"). ACRE further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. ACRE objects to this Interrogatory as the MTD and the facts of that transaction in particular speak for themselves and because the facts relating to the identified allegation are equally within the possession of the Debtor. ACRE also objects to the Interrogatory as unduly burdensome if construed to require ACRE to lay out every fact potentially relevant to that contention, or to specify all evidence and facts that the ACRE may raise at the hearing. ACRE further objects to this Interrogatory as a premature contention interrogatory, as it seeks information that is not appropriate or proportional for discovery at this point in the litigation. The Interrogatory's request for the factual basis supporting ACRE's MTD while discovery is ongoing, written discovery and document production are not complete, and no depositions have been taken is premature and therefore not proper at this stage.

Subject to and without waiving the foregoing objections, ACRE responds as follows: In December 2025, MRAD Phase II, LLC transferred certain real property (specifically, Tract K and Tract L of the Summer House property) via Special Warranty Deed to MRAD Phase III, LLC, an affiliated entity of the Niederst family, for nominal consideration ($10.00) and without the prior written consent of the Preferred Investor, as required by the Operating Agreement. The transfer was recorded in the Official Public Records of Orange County, Florida as Instrument No.

20260130751 on March 5, 2026. ACRE contends that this transfer was designed to place assets beyond the reach of ACRE as a secured creditor and constituted a prohibited transfer under the Operating Agreement. The transfer carries several badges of fraud, including transfer for a nominal consideration, to a related party, that was concealed from the Debtor's main creditor. ACRE reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 5:**

Please state (in detail) the factual bases (or bases) for ACRE's contention in Paragraph 30 of the MTD that "the properties are being mismanaged beyond failure to service debt: material accounts payable, taxes, liens, and other critical obligations remain unpaid, placing operations on an unsustainable trajectory… ."

**RESPONSE TO INTERROGATORY NO. 5:**

ACRE objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. ACRE further objects to this Interrogatory to the extent it is overbroad and unduly burdensome, as it requests detailed factual bases without reasonable limitation. ACRE objects to this Interrogatory as the MTD speaks for itself and because the facts relating to the identified allegation are equally within the possession of the Debtor. ACRE also objects to the Interrogatory as unduly burdensome if construed to require ACRE to lay out every fact potentially relevant to that contention, or to specify all evidence and facts that the ACRE may raise at the hearing.

Subject to and without waiving the foregoing objections, ACRE responds as follows: As set forth in Paragraph 30 of the Motion to Dismiss, the Portfolio is "severely distressed." MTD ¶ 30. ACRE further alleges that "three properties are currently subject to foreclosure actions" by

mortgage lenders, that the properties "are materially underperforming, with occupancy rates of approximately 74% (well below market levels of approximately 90%)," and that the Portfolio "carries over $457 million in mortgage debt across ten mortgage loans, seven of which are currently in default (including three that are in foreclosure), with the remaining three expected to be in default by the end of the month as they reach their May 31, 2026 maturity dates." MTD ¶¶ 12, 30. ACRE grounds these allegations in public-record materials reviewed in connection with the Portfolio, which identify numerous outstanding obligations and adverse matters affecting the properties, including unpaid mechanic's liens, judgments, code enforcement violations, notices of *lis pendens*, foreclosure actions, and other pending lawsuits. ACRE further grounds these allegations in rent roll reports delivered by Nied Member to ACRE pursuant to Nied Member's periodic reporting obligations.

ACRE incorporates by reference the documents produced or to be produced in this matter and reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 6:**

Please state (in detail) the factual basis (or bases) for ACRE's assertion in Paragraph 30 of the MTD that "ACRE estimates that the Portfolio requires approximately $43 million in new money."

**RESPONSE TO INTERROGATORY NO. 6:**

ACRE objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. ACRE objects to this Interrogatory as the MTD speaks for itself and because the facts relating to the identified allegation are equally within the possession of the Debtor. ACRE also objects to the Interrogatory as unduly burdensome if

construed to require ACRE to lay out every fact potentially relevant to that contention, or to specify all evidence and facts that the ACRE may raise at the hearing. ACRE further objects to this Interrogatory as a premature contention interrogatory, as it seeks information that is not appropriate or proportional for discovery at this point in the litigation. The Interrogatory's request for the factual basis supporting ACRE's MTD while discovery is ongoing, written discovery and document production are not complete, and no depositions have been taken is premature and therefore not proper at this stage.

Subject to and without waiving the foregoing objections, ACRE responds as follows: As set forth in Paragraph 30 of the Motion to Dismiss, "ACRE estimates that the Portfolio requires approximately $43 million in new money—beyond the $457 million needed to cure current and imminent mortgage loan defaults—to address capital expenditure needs and support ongoing operations." MTD ¶ 30. ACRE further alleges that the Debtor "was unable to contribute even $30 million to avoid three mortgage foreclosures a few weeks ago" and that the Debtor would need to "obtain the approximately $500 million required to cure mortgage loan defaults, address capital expenditure needs, and support ongoing operations." MTD ¶ 38. ACRE's estimate is based on its assessment of the Portfolio's operational needs as described in the Motion to Dismiss and supporting exhibits, including Exhibit 2 (Portfolio and Loan Summary).

ACRE incorporates by reference any documents produced or to be produced in this matter and reserves the right to supplement this response as discovery proceeds.

**<u>INTERROGATORY NO. 7</u>:**

Please state (in detail) the factual basis (or bases) for ACRE's contention in Paragraph 32 of the MTD that "[T]o the extent the Debtor contends that an equity cushion adequately protects ACRE, that contention is specious… ."

**<u>RESPONSE TO INTERROGATORY NO. 7</u>:**

ACRE objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. ACRE further objects to this Interrogatory to the extent it is overbroad and unduly burdensome, as it requests detailed factual bases without reasonable limitation. The MTD speaks for itself. ACRE further objects to this Interrogatory as a premature contention interrogatory, as it seeks information that is not appropriate or proportional for discovery at this point in the litigation. The Interrogatory's request for the factual basis supporting ACRE's MTD while discovery is ongoing, written discovery and document production are not complete, and no depositions have been taken is premature and therefore not proper at this stage.

Subject to and without waiving the foregoing objections, ACRE responds as follows: As set forth in Paragraphs 32–37 of the Motion to Dismiss, any purported equity cushion does not adequately protect ACRE because: (a) "The Property Owners have not sought bankruptcy protection, and their mortgage lenders remain free to continue exercising remedies unaffected by the Debtor's automatic stay, thereby reducing the asset base supporting ACRE's collateral," MTD ¶ 30; (b) "three properties are currently subject to foreclosure actions, and any such property-level foreclosures (pending or future) will permanently impair or wipe out the value of ACRE's collateral," MTD ¶ 30; (c) "The Debtor has not offered any adequate protection to ACRE, nor can it plausibly do so. Rather, it is ACRE that has stepped up to provide new capital and negotiate

agreements with mortgage lenders that benefit the Debtor," c; and (d) "the Debtor has no equity in its pledged interests in Nied Member" because the value of the Debtor's equity interests in Nied Member is dependent upon and limited to the residual value of the Portfolio after satisfying the structurally senior claims of the Portfolio's mortgage lenders. MTD ¶ 34. Once those obligations are satisfied, there is no residual value. Furthermore, that the proposed UCC Article 9 sale had no other bidders as of the petition date further reflects that there is no such residual value for the Portfolio.

ACRE incorporates by reference any documents produced or to be produced in this matter and reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 8:**

Please state (in detail) the factual basis (or bases) for ACRE's decision not to purchase the collateral through the JLL-administered process under a Confidentiality Agreement limiting its use of that information.

**RESPONSE TO INTERROGATORY NO. 8:**

ACRE objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome, including because it seeks an answer "in detail" without regard to whether they are duplicative, non-responsive, or not proportional to the needs of the case. ACRE further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. ACRE further objects to this Interrogatory as a premature contention interrogatory, as it seeks information that is not appropriate or proportional for discovery at this point in the litigation. The Interrogatory's request for the factual basis supporting ACRE's MTD

while discovery is ongoing, written discovery and document production are not complete, and no depositions have been taken is premature and therefore not proper at this stage.

Subject to and without waiving the foregoing objections, ACRE responds as follows: ACRE's decision not to purchase the collateral through the JLL-administered process is because it did not meet ACRE's investment criteria.

**INTERROGATORY NO. 9:**

Please provide all details related to ACRE's purchase of PIMCO's preferred equity interest in the Debtor.

**RESPONSE TO INTERROGATORY NO. 9:**

ACRE objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome, including because it seeks "all details" without regard to whether they are duplicative, non-responsive, or not proportional to the needs of the case, as many of such details are bound, by necessity to be. ACRE further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, ACRE responds as follows: ACRE will produce the relevant agreement(s) and a deponent with personal knowledge of the facts and circumstances surrounding the purchase.

**INTERROGATORY NO. 10:**

Please identify all brokers that ACRE has engaged in connection with this matter. As part of ACRE's answer, please state (in detail) any opinion(s) of the Portfolio's (as defined on Pages 3 and 4 of the MTD) value provided by such broker(s).

**<u>RESPONSE TO INTERROGATORY NO. 10</u>:**

ACRE objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome, including because it seeks an answer "in detail" without regard to whether they are duplicative, non-responsive, or not proportional to the needs of the case. ACRE further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, ACRE responds as follows: ACRE engaged JLL to be its broker in connection with this matter to engage in the planned foreclosure sale. JLL has not provided an opinion as to the Portfolio's value.

Dated: June 17, 2026.

/s/ Lara Roeske Fernandez
Lara Roeske Fernandez, Esq.
Florida Bar No. 88500
lfernandez@trenam.com
**TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.**
101 E Kennedy Boulevard, Suite 2700
Tampa, FL 33602
Telephone: (813) 223-7474

*Counsel for ACRE CFPortfolio LLC*

/s/ Charles A. Dale
Charles A. Dale, Esq. (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110-2600
Telephone: (617) 519-9600
Email: cdale@proskauer.com

*Counsel for ACRE CFPortfolio LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 17, 2026, a true and correct copy of the foregoing was served via email to counsel for Nied Ownership, LLC: Amy Denton Mayer (amayer@bergersingerman.com) and Edward J. Peterson (epeterson@bergersingerman.com).

*/s/ Lara Roeske Fernandez*
Lara Roeske Fernandez