**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**August 17, 2026 11:08**

By: ALEX TOMINC 0100689

Confirmation Nbr. 3948510

THE HUNTINGTON NATIONAL BANK — CV 26 144792

vs.

DAVID B. NIEDERST, ET AL. — **Judge:** ASHLEY KILBANE

**Pages Filed:** 43

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| **THE HUNTINGTON NATIONAL BANK,**<br>200 Public Square (CM 17)<br>Cleveland, Ohio 44114<br><br>Plaintiff,<br><br>v.<br><br>**DAVID B. NIEDERST**,<br>22200 Lake Road<br>Rocky River, Ohio 44116<br><br>and<br><br>**ADRINA A. NIEDERST**,<br>22200 Lake Road<br>Rocky River, Ohio 44116<br><br>and<br><br>**J.P. MORGAN CHASE BANK, N.A.**,<br>1414 Woodward Avenue<br>Ruston, Louisiana 71270<br><br>and<br><br>**CUYAHOGA COUNTY TREASURER**,<br>Brad Cromes<br>2079 E 9th St.<br>Cleveland, Ohio 44115<br><br>Defendants. | CASE NO.<br><br>JUDGE<br>MAGISTRATE<br><br>**COMPLAINT IN FORECLOSURE**<br><br>**(Foreclosure: Cuyahoga County Permanent Parcel No. 302-05-010)** |

Plaintiff The Huntington National Bank, for its Complaint in Foreclosure against Defendant/Judgment Debtor David B. Niederst, and Defendants Adrina A. Niederst, J.P. Morgan

Chase Bank, N.A., and Cuyahoga County Treasurer, Brad Cromes (sometimes collectively referred to as "Defendants"), states as follows:

## PARTIES AND VENUE

1. Plaintiff The Huntington National Bank ("Huntington") is a national banking association, organized and existing by virtue of the laws of the United States and the State of Ohio, with a principal place of business located at 17 South High Street, Columbus, OH 43215.

2. Defendant/Judgment Debtor David B. Niederst ("Judgment Debtor") is an individual who resides in Cuyahoga County, Ohio and who purportedly has an interest in the subject real property.

3. Defendant/Judgment Debtor Adrina A. Niederst ("Ms. Niederst") is an individual who resides in Cuyahoga County, Ohio and who purportedly has an interest in the subject real property.

4. Defendant J.P. Morgan Chase Bank, N.A. ("J.P. Morgan") is a national banking association, organized and existing by virtue of the laws of the United States, with a principal place of business located at 270 Park Avenue, New York, NY 10017. Upon information and belief, J.P. Morgan has or may have an interest in the subject real property.

5. Defendant Cuyahoga County Treasurer has or may have an interest in the Property as a result of property taxes.

6. This Court has general jurisdiction over this matter, and venue is proper pursuant to Ohio Rule of Civil Procedure 3(B) because the subject real property is located in Cuyahoga County, Ohio.

## COUNT ONE
**FORECLOSURE**

7. Judgment Debtor is the titled fee owner of certain Real Property in Cuyahoga County, Ohio, Permanent Parcel No. 302-05-010 and commonly known as 22200 Lake Road, Rocky River, Ohio 44116 (the "Real Property").

8. A copy of the Plat of Consolidation for the Real Property is attached hereto as Exhibit 1 and is incorporated herein.

9. Plaintiff holds all right, title, and interest in a certain Judgment against Judgment Debtor in Cuyahoga County Court of Common Pleas, Case No. CV-26-134577, and secured by Judgment Lien No. JL26355244 in the amount of $46,724,201.20, plus additional charges and interest as set forth therein, which was filed of record in the Court of Common Pleas of Cuyahoga County, Ohio on June 12, 2026, and that said Judgment and Judgment Lien are wholly unsatisfied. A copy of the Judgment Lien is attached hereto as Exhibit 2 and is incorporated herein.

10. Plaintiff also holds all right, title, and interest in a certain Judgment against Judgment Debtor in Cuyahoga County Court of Common Pleas, Case No. CV-26-138471, and secured by Judgment Lien No. JL26355239 in the amount of $3,771,958.34, plus additional charges and interest as set forth therein, which was filed of record in the Court of Common Pleas of Cuyahoga County, Ohio on June 12, 2026, and that said Judgment and Judgment Lien are wholly unsatisfied. A copy of the Judgment Lien is attached hereto as Exhibit 3 and is incorporated herein.

11. By reason of the Judgment and Judgment Lien No. JL26355244, Plaintiff states that the obligations of Judgment Debtor under his defaulted Guaranty of Payment to Plaintiff on behalf of non-party MRAD Phase II, LLC (the "MRAD Guaranty") are final and fully adjudicated. A copy of the MRAD Guaranty is attached hereto as Exhibit 4 and is incorporated herein.

12. By reason of the Judgment and Judgment Lien No. JL26355239, Plaintiff states that the obligations of Judgment Debtor under his defaulted Guaranty of Payment to Plaintiff on behalf of non-party MWAD Phase II, LLC (the "MWAD Guaranty") are final and fully adjudicated. A copy of the MWAD Guaranty is attached hereto as Exhibit 5 and is incorporated herein.

13. The Judgments and Judgment Liens constitute good and valid liens upon the Real Property.

14. Judgment Debtor has failed to pay on the Judgments and Judgment Liens, and Plaintiff is entitled to enforce its rights and remedies thereunder.

15. J.P. Morgan has or may have a claim to some lien upon or interest in the Real Property described herein.

16. By reason of the foregoing, Plaintiff asks that the Real Property subject hereto (Cuyahoga County Permanent Parcel No. 302-05-010) be sold at foreclosure sale and that all liens be marshaled according to law.

WHEREFORE, Plaintiff The Huntington National Bank prays that judgment and a decree of foreclosure be rendered against Defendant/Judgment Debtor David B. Niederst; that Plaintiff's Judgment Lien Nos. JL26355244 and JL 26355239 be adjudged good and valid liens upon the Real Property described herein in the full amount of principal, interest, and costs that may be then due and owing; that the said Real Property be ordered advertised and sold and all liens be marshaled according to law; that Plaintiff be paid out of the proceeds of such sale; that Defendants' equity of redemption be foreclosed; that Defendants be required to have set up their lien or interest in the Real Property or be forever barred; and that Plaintiff have such other relief, legal or equitable, as may be proper and necessary, together with the costs of this action.

Respectfully submitted,

/s/ *Alex Tominc*
SCOTT N. OPINCAR (0064027)
RICHARD W. CLINE (0068560)
ALEX TOMINC (0100689)
McDonald Hopkins LLC
600 Superior Ave., East Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Email: sopincar@mcdonaldhopkins.com
rcline@mcdonaldhopkins.com
atominc@mcdonaldhopkins.com

*Attorneys for Plaintiff/Judgment Creditor*
*The Huntington National Bank*

# EXHIBIT 1




## Line Table

| Line # | Length | Bearing |
|---|---|---|
| L1 | 30.01' | N 00° 34' 00" W |
| L2 | 30.01' | N 00° 34' 00" W |
| L3 | 30.01' | N 00° 34' 00" W |
| L4 | 30.00' | N 01° 04' 33" W |

# Lake Road 60'

U.S. Route 6
(Formerly West Lake Road)
(Dedicated Volume 57, Page 4 C.C.M.R.)
(A Public Right-of-Way)

# Plat of Consolidation

Creating
Parcel "C"
22200 Lake Road
P.P.N. 302-05-004
22180 Lake Road
P.P.N. 302-05-005

Situated in the City of Rocky River, County of Cuyahoga and State of Ohio and known as being all of Parcels "A" and "B" in the Lot Split and Consolidation of part of the Original Rockport Township Section No. 25, as shown by the plat recorded in Volume 339, Page 09 of Cuyahoga County Map Records.

## Owners Acceptance

I, (We) the undersigned owner(s) of the land shown hereon, do hereby accept this Plat of Consolidation of the same.

[signature]
David B. Niederst

## Notary

State of Florida }
County of Lee }

Before me a Notary Public in and for said County and State, personally appeared the above named Owner(s) who acknowledged that he did sign the foregoing instrument and that it was his own free act and deed.

In witness whereof, I have hereunto set my hand and official seal at 1624 Cape Coral Pkwy W. this 3rd day of August 2021.

[signature]
Notary Public
04/03/23.
My commission expires

## Approvals

This Plat of Consolidation is accepted and approved by the City Engineer of the City of Rocky River, Ohio this 19th day of August 2021.

[signature] — City Engineer
Michael Mackay — Print Name

This Plat of Consolidation is accepted and approved by the Law Director of the City of Rocky River, Ohio this 19 day of August 2021.

[signature] — Law Director
Andrew D. Bemer — Print Name

This Plat of Consolidation is accepted and approved by the Building Commissioner of the City of Rocky River, Ohio this 19 day of August 2021.

[signature] — Building Commissioner
Raymond C. Reich — Print Name

STATE OF OHIO — EDWARD B. DUDLEY, III — 6747 — REGISTERED — PROFESSIONAL SURVEYOR

## Certification

This plat was prepared from a field survey, analysis of recorded plats, recorded deeds, and city survey records. Bearings shown hereon are to an assumed meridian and are intended to indicate angles only. Distances are given in feet and decimal parts thereof. All of which I certify to be correct to the best of my knowledge. I hereby certify I have surveyed the subject premises and prepared this drawing in Accordance with the provisions of Chapter 4733-37 of the Ohio Administrative Code.

[signature]
Edward B. Dudley, III — P.S. No. 6747 — July 26, 2021 — Date

## Note

Note: ● Denotes 5/8"x30" iron pins set and capped "Riverstone Company-PS6747-PS8646"

## Legend

- M = Monument Box Found
- ○ = Iron Pin Found
- ○ = Iron Pipe Found
- ● = 5/8"x30" Iron Pin Set
- ◉ = Drill Hole Set / Found
- = P.K. Nail Set / Found
- ℄ = Centerline

## Basis of Bearings

The centerline of Lake Road as South 88°06'00" West as shown in the Lot Split and Consolidation as recorded in Volume 339, Pages 09 of Cuyahoga County Map Records.

## Reference Surveys

1.) Beach Cliff Estates Subdivision Proposed
2.) Map of the Realty Underwriting Company's Beach Cliff Subdivision No. 5 Volume 73, Page 14 Cuyahoga County Map Records
3.) Lot Split and Consolidation of Volume 339, Page 09 Cuyahoga County Map Records

## Drawn By

BDK

## Approved

EBD PS NO. 6747

RIVERSTONE
LAND SURVEYING · ENGINEERING · DESIGN
3800 LAKESIDE AVENUE · SUITE 100
CLEVELAND · OHIO · 44114
PHONE: (216) 491-2000 FAX: (216) 491-9640
WWW.RIVERSTONESURVEY.COM

2021-203, Page 1 of 1

22180 AND 22200 LAKE ROAD

© 2021 THE RIVERSTONE COMPANY. THIS STYLE AND FORMAT IS PROTECTED BY COPYRIGHT LAWS AND ALL RIGHTS ARE RESERVED. THE USE OF THIS STYLE AND FORMAT IS STRICTLY PROHIBITED WITHOUT WRITTEN CONSENT/PERMISSION OF THE RIVERSTONE COMPANY.

CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICERS - 1
PLAT 8/26/2021 12:06:11 PM
202108260203

# PLAT DATA SHEET

Plat Title: Plat of Consolidation for David B. Niederst

Plat Type: Consolidation

Municipality: Rocky River

Township: Original Rockport Township Section No. 25

Parent Parcel Numbers: 302-05-004, 302-05-005

Number of New parcels created: 1

Number of deeds filed with plat: 0

Plat Size: 24"x 36"

Date Filed: 8/26/2021

Recorder's Fee:

CUYAHOGA COUNTY FISCAL OFFICER
302-05-004 8/26/2021 1
302-05-005 J-08262021-10
NIEDERST, DAVID B. AND NIE Tax Dist. 3290
Plat LUC: 5100 EX:
Sale Amt: $ 0.00 LAND: 643,200
Conv. Fee: $ 0.00 BLDG: 2,447,100
PUBLIC TOTAL: 3,090,300
*1044983*

## New Parcels

New Parcel Numbers are subject to change

| Parcel Name/Sublot: | Proposed Permanent Parcel Number: |
|---|---|
| Parcel "C" (Niederst) | 302-05-010 |

# EXHIBIT 2

# NAILAH K. BYRD

## CLERK OF COURTS
## COMMON PLEAS COURT
## CUYAHOGA COUNTY, OHIO

**THE HUNTINGTON NATIONAL BANK**

vs

**MICHAEL D NIEDERST ET AL.,**

**Case:** **JL26355244**

**Filed:** **06/12/2026**

**Certificate of Judgment**
Revised Code Sec. 2329

I, NAILAH K. BYRD, Clerk of the Common Pleas Court of Cuyahoga County, Ohio, do hereby certify that on the 18th day of May 2026, a judgment was by said Court rendered in favor of THE HUNTINGTON NATIONAL BANK and against MICHAEL D. NIEDHERST and DAVID B. NIEDHERST for the sum of $46,724,201.20 and interest at 11.21% from the 9th day of March, 2026, and $200.00 costs of suit, in a certain action then pending in said Court, CV26134577 on the docket thereof, wherein THE HUNTINGTON NATIONAL BANK plaintiff, and MICHAEL D NIEDERST defendant, which said judgment appears more fully and at large in Book IMAGE page IMAGE, of said Court.

FILED
June 12, 2026 2:05 PM
NAILAH K. BYRD
CLERK OF COURTS
CUYAHOGA COUNTY

WITNESS my hand and seal of said Court this 12th day of June, 2026.

COMMON PLEAS COURT · CUYAHOGA COUNTY · OHIO

By ______________________________,
Deputy

Attorney: ALEX TOMINC

# EXHIBIT 3

# NAILAH K. BYRD

## CLERK OF COURTS
## COMMON PLEAS COURT
## CUYAHOGA COUNTY, OHIO

**THE HUNTINGTON NATIONAL BANK** — **Case: JL26355239**

vs — **Filed: 06/12/2026**

**MWAD PHASE II, LLC, ET AL.,** — **Certificate of Judgment**

Revised Code Sec. 2329

I, NAILAH K. BYRD, Clerk of the Common Pleas Court of Cuyahoga County, Ohio, do hereby certify that on the 7th day of May 2026, a judgment was by said Court rendered in favor of THE HUNTINGTON NATIONAL BANK and against MWAD PHASE II, LLC and MICHAEL D NIEDERST and DAVID B NIEDERST for the sum of $3,771,958.34 and interest at 12.42% from the 6th day of April, 2026, and $200.00 costs of suit, in a certain action then pending in said Court, CV26138471 on the docket thereof, wherein THE HUNTINGTON NATIONAL BANK plaintiff, and MWAD PHASE II, LLC, ET AL defendant, which said judgment appears more fully and at large in Book IMAGE page IMAGE, of said Court.

FILED
June 12, 2026 1:51 PM
NAILAH K. BYRD
CLERK OF COURTS
CUYAHOGA COUNTY

WITNESS my hand and seal of said Court this 12th day of June, 2026.

COPY

By ______________________________,
Deputy

Attorney: ALEX TOMINC

COMMON PLEAS COURT · CUYAHOGA COUNTY · OHIO

# EXHIBIT 4

# GUARANTY OF PAYMENT

This *Guaranty of Payment* ("Guaranty") made as of the 18th day of March, 2022 (the "Effective Date"), by **MICHAEL D. NIEDERST,** an individual, and **DAVID B. NIEDERST**, an individual (collectively and each, individually, "Guarantor'), to and for the benefit of **THE HUNTINGTON NATIONAL BANK**, a national banking association, its successors and assigns, in its capacity as Agent for the Lender(s) (as defined therein) under the Loan Agreement (defined below) ("Agent").

## RECITALS:

WHEREAS, MRAD Phase II, LLC, a Florida limited liability company (the "Borrower"), Agent, and the Lenders party thereto, entered into that certain *Construction Loan Agreement* dated on or about the date hereof ("Loan Agreement") concerning the loan (the "Loan") to be made to Borrower in the principal amount of up to Forty-Four Million Three Hundred Twenty-Five Thousand and 00/100 Dollars ($44,325,000.00) pursuant to the terms of the Loan Agreement. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

WHEREAS, in connection with the Loan, Borrower has executed and delivered, or will execute and deliver, (i) a $25,000,000.00 Amended and Restated Promissory Note to Huntington, in its capacity as a Lender, and (ii) a $19,325,000.00 Amended and Restated Promissory Note to Premier, in its capacity as a Lender (as amended, modified, replaced, restated or supplemented from time to time, each a "Note" and together, the "Notes"), which Notes are secured by: (i) an Amended & Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement (the "Mortgage") made by Borrower in favor of Agent encumbering the Property (as defined in the Loan Agreement); and (ii) the other Loan Documents (as defined in the Loan Agreement).

WHEREAS, each Guarantor will derive an economic benefit from the Loan evidenced and secured by the Notes, the Mortgage and the other Loan Documents.

WHEREAS, Agent and Lender(s) have relied on the statements and agreements contained herein in agreeing to make the Loan, and the execution and delivery of this Guaranty by each Guarantor is a condition precedent to the making of the Loan by Lender(s).

## AGREEMENTS:

NOW, THEREFORE, intending to be legally bound, Guarantor, in consideration of the matters described in the foregoing Recitals, which Recitals are incorporated herein and made a part hereof, and for other good and valuable consideration the receipt and sufficiency of which are acknowledged, hereby covenants and agrees for the benefit of Agent, on behalf of Lender(s), and their respective successors, indorsees, transferees, participants and assigns as follows:

1. **Guaranteed Obligations**. Guarantor absolutely, unconditionally, irrevocably, and jointly and severally guarantees:

(a) the full and prompt payment of the principal of and interest on the Notes when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter,

as well as the full and prompt payment of any and all of Borrower's liabilities, obligations, and debts to Agent and/or any Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, lease obligations, liabilities arising under Hedging Contracts, commercial card indebtedness, and any other obligations and liabilities of Borrower to Agent and/or any Lender; whether any such indebtedness is due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether recovery on the indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever (collectively, the "Indebtedness");

(b) the prompt, full and complete performance of all of Borrower's obligations under each and every covenant contained in the Loan Documents; and

(c) the full and prompt payment of any Enforcement Costs (as hereinafter defined in Section 9 hereof).

All amounts due, debts, liabilities and payment obligations described in subsections (a), (b) and (c) of this Section 1 shall be hereinafter collectively referred to as the "Guaranteed Obligations."

**2. Independent Obligations**. In the event Borrower shall fail to pay in full, when due, any of the Guaranteed Obligations, Guarantor agrees, on demand by Agent, any Lender or the holder of any of the Notes, to pay the Guaranteed Obligations regardless of any defense, right of set-off or claims which Borrower or Guarantor may have against Agent, any Lender or the holder of any of the Notes. All of the remedies set forth herein and/or provided for in any of the Loan Documents or at law or equity shall be equally available to Agent and/or any Lender, and the choice by Agent and/or any Lender of one such remedy over another shall not be subject to question or challenge by Guarantor or any other person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding, or counteraction by Agent and/or any Lender to recover or seeking any other remedy under this Guaranty, nor shall such choice preclude Agent and/or any Lender from subsequently electing to exercise a different remedy. Without limitation to the generality of the foregoing, it is expressly hereby acknowledged and agreed that the obligations of Guarantor hereunder are independent of the obligations of Borrower, Guarantor or any other guarantor or indemnitor under any of the other Loan Documents to which they may be a party, and a separate action or actions may be brought and prosecuted against Guarantor whether or not any action is brought against Borrower, any other guarantor or indemnitor and whether or not Borrower is joined in any such action or actions.

**3. Waiver of Defenses**. Except as prohibited by applicable law, each Guarantor waives any right to require Agent and/or any Lender: (a) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Guaranteed Obligations or of any nonpayment related to any Collateral, or notice of any action or nonaction on the part of Borrower, Agent, any Lender, any surety, endorser, or other guarantor in connection with the Guaranteed Obligations or in connection with the creation of new or additional loans or obligations; (b) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (c) to proceed directly against any Collateral, any other guarantor, or any other person; (d) to give notice of the terms, time, and place of any public or private sale of any personal property Collateral, or to comply with any other applicable provisions of the Uniform Commercial Code; (e) to pursue any other remedy within Agent and/or any

Lender's power; or (f) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Each Guarantor further agrees to: (a) refrain from asserting, until after repayment in full of the Loan, any defense, right of set-off or other claim which Guarantor may have against Borrower; (b) waive any defense, right of set-off or other claim which Guarantor or Borrower may have against Agent, any Lender, or the holder of any of the Notes; (c) waive any and all rights Guarantor may have under any anti-deficiency statute or other similar protections; and (d) waive any failure by Lender to inform Guarantor of any facts Lender may now or hereafter know about Borrower, the Property, the Loan, or the transactions contemplated by the Loan Agreement, it being understood and agreed that Lender has no duty so to inform and that Guarantor is fully responsible for being and remaining informed by Borrower of all circumstances bearing on the risk of nonperformance of Borrower's obligations.

In addition to, and without limitation to, the foregoing waivers, each Guarantor hereby also waives: (a) any right to require Agent and/or any Lender, as a condition of payment or performance or completion by any Guarantor, to: (i) proceed against Borrower, any other guarantor, or any other person, (ii) proceed against or exhaust any security held from Borrower, any other guarantor, or any other person, (iii) proceed against or have resort to any balance of any deposit account or credit on the books of Agent and/or any Lender in favor of Borrower or any other person, or (iv) pursue any other remedy in the power of Lender whatsoever; (b) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of Borrower, including, without limitation, any defense based on or arising out of the lack of validity or the unenforceability of the Guaranteed Obligations or any agreement or instrument related thereto or by reason of the cessation of the liability of Borrower from any cause other than payment, performance and completion in full of the Guaranteed Obligations; (c) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty and any legal or equitable discharge of any Guarantor's obligations hereunder (other than indefeasible payment, performance and completion of the Guaranteed Obligations or the Loan in full), (ii) the benefit of any statute of limitations affecting any Guarantor's liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims and (iv) promptness, diligence and any requirement that Agent and/or any Lender protect, secure, perfect or insure any security interest or lien or any property subject thereto; (e) any release, discharge, modification, impairment or limitation of the liability of Borrower to Agent and/or any Lender, whether consented to by Agent or such Lender, consensual or arising by operation of law or any proceedings in bankruptcy or reorganization, or from any other cause, other than payment in full of the Loan; (f) any defense based on any rejection or disaffirmance of the Guaranteed Obligations, or any part thereof, or any security held therefor, in any such proceedings in bankruptcy or reorganization; and (g) any defense based on any action taken or omitted by Agent and/or any Lender in any proceedings in bankruptcy or insolvency involving Borrower, including any election to have their claim allowed as being secured, partially secured or unsecured, any extension of credit by Agent and/or any Lender to Borrower in any proceedings in bankruptcy or insolvency, and taking and holding by Agent and/or any Lender of any security for any such extension of credit.

**4. Authorization of Amendments to Loan Documents; Waiver of Right to Notice of Amendment**. The obligations of the undersigned Guarantor under this Guaranty extend to all amendments, supplements, modifications, renewals, replacements or extensions of the Loan Documents and all Hedging Contracts at any rate or rates of interest. The liability of Guarantor and the rights of Agent and/or any Lender under this Guaranty will not be impaired or affected in any manner by, and each Guarantor hereby consents in advance to, and waives any requirement of notice for, any: (1) disposition, impairment, release, surrender, substitution, or modification of any Collateral or the obligations created by this Guaranty or failure to perfect a security interest in any Collateral; (2) release (including adjudication or discharge in bankruptcy) or settlement with Borrower or any other party which may be or become liable for the Guaranteed Obligations (including, without limitation, any maker, indorser, guarantor or surety); (3) delay in enforcement of payment of the Guaranteed Obligations or delay in enforcement of this Guaranty; (4) delay, omission, waiver, or forbearance in exercising any right or power with respect to the Guaranteed Obligations or this Guaranty; (5) defense arising from the enforceability, validity or genuineness of any of the Loan Documents; (6) defenses or counterclaims that Borrower may assert under or in respect of any of the Loan Documents, including, but not limited to, failure of consideration, fraud, payment, statute of frauds, bankruptcy, statute of limitations, lender liability, accord and satisfaction and usury; or (7) other act or omission which might otherwise constitute a legal or equitable discharge of the undersigned. Guarantor acknowledges that no representations of any kind whatsoever have been made by Agent and/or any Lender. No modification or waiver of any of the provisions of this Guaranty shall be binding upon Agent and/or any Lender except as expressly set forth in a writing duly signed and delivered by Agent.

Further, and without limitation to the foregoing, Agent, upon such terms as it deems appropriate, without notice or demand and without affecting the validity or enforceability of this Guaranty or giving rise to any reduction, limitation, impairment, discharge or termination of the Guarantor's liability hereunder, from time to time may: (i) renew, extend, accelerate, increase the rate of interest on, or otherwise change the time, place, manner or terms of payment or performance under the Loan Documents, (ii) settle, compromise, release or discharge, or accept or refuse any offer of performance with respect to, or substitutions for, the Guaranteed Obligations and/or the Loan Documents, and/or subordinate the payment of the same to the payment of any other obligations; (iii) request and accept other guaranties of any of Borrower's obligations under the Loan Documents and take and hold security for the payment or performance of this Guaranty or the Loan Documents; (iv) release, surrender, exchange, substitute, compromise, settle, rescind, waive, alter, subordinate or modify, with or without consideration, any security for payment or performance of Borrower's obligations under the Loan Documents, any other guaranties of the Loan, or any other obligation of any person (including any other guarantor) with respect to the Loan; (v) enforce and apply any security now or hereafter held by or for the benefit of Agent and/or any Lender in respect of this Guaranty or the Loan and direct the order or manner of sale thereof, and to bid at any such sale, or exercise any other right or remedy that Agent and/or any Lender may have against any such security, in each case as in its discretion it may determine, including foreclosure on any such security pursuant to one or more judicial or non-judicial sales, even though such action operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Guarantor against Borrower or any security for the Guaranteed Obligations; (vi) apply any payments or recoveries from Borrower, Guarantor or any other source, and any proceeds of any security, to the Guaranteed Obligation in such manner, order and priority as Agent may elect (whether or not those obligations are guaranteed by this Guaranty or secured at the time of the application); and (vii) exercise any other rights available to it under the Loan Documents.

Agent may take any of the foregoing actions upon any terms and conditions as Agent may elect, without giving notice to, or obtaining consent from, Guarantor and without affecting the liability of any Guarantor to Agent and/or any Lender and this Guaranty and the obligations of Guarantor hereunder shall be valid and enforceable and shall not be subject to any reduction, limitation, impairment, discharge or termination for any reason.

Guarantor further agrees that Guarantor's liability as guarantor shall not be impaired or affected by any renewals or extensions which may be made from time to time, with or without the knowledge or consent of Guarantor of the time for payment of interest or principal under any of the Notes, it being the intent hereof that, subject to Agent's compliance with the terms of this Guaranty, Guarantor shall remain liable for the payment of the Guaranteed Obligations, until the Guaranteed Obligations has been paid in full, notwithstanding any act or thing which might otherwise operate as a legal or equitable discharge of a surety. Guarantor further understands and agrees that Agent and/or any Lender may at any time enter into agreements with Borrower to amend and modify any Note, Loan Agreement, Mortgage or other Loan Documents, and may waive or release any provision or provisions of any Note, Loan Agreement, Mortgage and other Loan Documents or any thereof, and, with reference to such instruments, may make and enter into any such agreement or agreements as Agent, Lender(s) and Borrower may deem proper and desirable, without in any manner impairing or affecting this Guaranty or any of Agent's and/or any Lender's rights hereunder or Guarantor's obligations hereunder.

**5. Guaranty of Payment and Not of Collection**. This is an absolute, present and continuing guaranty of payment and not of collection. Guarantor agrees that this Guaranty may be enforced by Agent without the necessity at any time of resorting to or exhausting any other security or Collateral given in connection herewith or with any Note, Loan Agreement, Mortgage or any of the other Loan Documents through foreclosure or sale proceedings, as the case may be, under the Mortgage or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Agent and/or any Lender to join Borrower in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right. Guarantor further agrees that nothing contained herein or otherwise shall prevent Agent and/or any Lender from pursuing concurrently or successively all rights and remedies available to it at law and/or in equity or under any Note, Loan Agreement, Mortgage or any other Loan Documents, and the exercise of any of its rights or the completion of any of its remedies shall not constitute a discharge of Guarantor's obligations hereunder, it being the purpose and intent of Guarantor that the obligations of Guarantor hereunder shall be absolute, independent and unconditional under any and all circumstances whatsoever and Guarantor shall remain fully liable for the payment and performance of all of the Guaranteed Obligations until the Loan and all Guaranteed Obligations have been indefeasibly paid and performed in full. None of Guarantor's obligations under this Guaranty or any remedy for the enforcement thereof shall be impaired, modified, changed or released in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Borrower under the Notes, Loan Agreement, Mortgage or other Loan Documents or by reason of the bankruptcy of Borrower or by reason of any creditor or bankruptcy proceeding instituted by or against Borrower. In the event of the foreclosure of the Mortgage and of a deficiency, Guarantor hereby promises and agrees forthwith to pay the amount of such deficiency notwithstanding the fact that recovery of said deficiency against Borrower would not be allowed by applicable law; however, the foregoing shall not be deemed to require that Agent institute foreclosure proceedings or otherwise resort to or exhaust any other Collateral or security prior to or concurrently with

enforcing this Guaranty. As used in this Guaranty, an "indefeasible" payment shall mean and refer to a payment that is no longer subject to potential disaffirmance, impairment, set aside, offset, recoupment, defeasance, recovery, disallowance, or recapture pursuant to the provisions of any federal or state law, regulation or order applicable to or governing creditors' rights, including, without limitation, Title 11 of the United States Code, as amended, either by reason of the passage of time following such payment or the final judgment of a court of competent jurisdiction establishing the unassailable right of the party receiving such payment to retain such payment without reduction, offset, or other impairment.

6. **Reinstatement**. If and to the extent that, for any reason, any payment (or portion thereof) by or on behalf of Borrower or Guarantor in respect of the Guaranteed Obligations is rescinded or must be otherwise restored by Agent and/or any Lender or any holder of the Guaranteed Obligations, whether as a result of any proceedings in bankruptcy or insolvency, the appointment of a receiver, intervenor, conservator, trustee or similar officer for Borrower, or otherwise, then the obligations of Guarantor shall be automatically reinstated and will continue to be effective as though such payment had not been made regardless of whether Agent and/or any Lender contested the order requiring return of such payment. Guarantor agrees that it will indemnify Agent and/or any Lender on demand for all costs and expenses (including, without limitation, fees and expenses of counsel) incurred by Agent or such Lender in connection with such rescission or restoration, including any such costs and expenses incurred in defending against any claim alleging that such payment constituted a preference, fraudulent transfer or similar payment under any bankruptcy, insolvency or similar law.

7. **Lender's Right to Assign Loan Documents and Guaranty**. In the event Agent, any Lender or any holder of any of the Notes shall assign such Note and this Guaranty, Guarantor will accord full recognition thereto and agrees that all rights and remedies of Agent, Lender or such holder hereunder shall be enforceable against Guarantor by such assignee with the same force and effect and to the same extent as would have been enforceable by such Lender or such holder but for such assignment; provided, however, that unless Agent or such Lender shall otherwise consent in writing, Agent or such Lender shall have an unimpaired right, prior and superior to that of its assignee or transferee, to enforce this Guaranty for such Lender's benefit to the extent any portion of the Guaranteed Obligations or any interest therein is not assigned or transferred.

8. **Rights of Set-Off.** If an Event of Default shall occur, Agent shall have the right, in addition to all other rights and remedies available to it, to set-off against and to appropriate and apply to the unpaid balance of the Guaranteed Obligations any debt owing to, and any other funds held in any manner for the account of, Guarantor by Agent, including without limitation all funds in all deposit accounts (general or special) now or hereafter maintained by Guarantor with Agent (excluding, however, all IRA, Keogh, and trust accounts). Such right shall exist whether or not Agent shall have made any demand under this Guaranty or any such participation or any other Loan Document and whether or not the Guaranteed Obligations are matured or unmatured. Guarantor hereby confirms the foregoing arrangements and Agent's right of banker's lien and set-off, and nothing in this Guaranty or any other Loan Document shall be deemed any waiver or prohibition of any such holder's, Lender's or Agent's right of banker's lien or set-off.

9. **Attorneys' Fees and Expenses & Liability for Enforcement Costs**. Guarantor agrees to pay all costs, expenses (including reasonable attorneys' fees), and disbursements incurred by Agent and/or any Lender on Borrower's behalf (a) in all efforts made to enforce this Guaranty,

(b) in connection with modifying or amending this Guaranty, (c) in enforcing and foreclosing on Agent's and/or any Lender's security interest in any Collateral or possession of any premises containing any Collateral, whether through judicial proceedings or otherwise, (d) in defending or prosecuting any actions or proceedings arising out of or relating to Agent's and/or any Lender's transactions with Guarantor, or (e) in connection with any advice given to Agent and/or any Lender with respect to its rights and obligations under this Guaranty and all related agreements. Expenses being reimbursed by Guarantor under this section include costs and expenses incurred in connection with: (t) appraisals and insurance reviews; (u) environmental examinations and reports; (v) field examinations and the preparation of reports based thereon; (w) the fees charged by a third party retained by Agent or the internally allocated fees for each Person employed by Agent with respect to each field examination; (x) taxes, fees and other charges for (i) lien and title searches and (ii) the recording of any mortgages, filing of any financing statements and continuations, and other actions to perfect, protect, and continue Agent's and/or any Lender's security interests; (z) sums paid or incurred to take any action required of Borrower under the Loan Documents that Borrower fails to pay or take; and (aa) forwarding loan proceeds, collecting checks and other items of payment, and costs and expenses of preserving and protecting the Collateral (all of which are referred to herein as "Enforcement Costs"). Guarantor shall pay to Agent upon demand all Enforcement Costs incurred in connection therewith, in addition to all other amounts due hereunder, regardless of whether all or a portion of such Enforcement Costs are incurred in a single proceeding brought to enforce this Guaranty as well as the other Loan Documents.

**10. Severability; Partial Invalidity**. Agent and Guarantor intend and believe that each provision in this Guaranty comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Guaranty is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Guaranty to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Guaranty shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Agent, any Lender or the holder of any Note under the remainder of this Guaranty shall continue in full force and effect.

**11. WAIVER OF MARSHALLING; JURISDICTION. TO THE GREATEST EXTENT PERMITTED BY LAW, EACH GUARANTOR HEREBY WAIVES ANY AND ALL RIGHTS TO REQUIRE MARSHALLING OF ASSETS BY AGENT AND/OR ANY LENDER. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS RELATING TO THIS GUARANTY (EACH, A "PROCEEDING"), AGENT, EACH LENDER AND EACH GUARANTOR IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE CITY OF CLEVELAND AND STATE OF OHIO; AND (B) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. NOTHING IN THIS GUARANTY SHALL PRECLUDE LENDER FROM**

**BRINGING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION. AGENT AND GUARANTOR FURTHER AGREE AND CONSENT THAT, IN ADDITION TO ANY METHODS OF SERVICE OF PROCESS PROVIDED FOR UNDER APPLICABLE LAW, ALL SERVICE OF PROCESS IN ANY PROCEEDING IN ANY STATE OR UNITED STATES COURT SITTING IN THE CITY OF CLEVELAND AND MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO THE APPLICABLE PARTY AT THE ADDRESS INDICATED BELOW, AND SERVICE SO MADE SHALL BE COMPLETE UPON RECEIPT; EXCEPT THAT IF SUCH PARTY SHALL REFUSE TO ACCEPT DELIVERY, SERVICE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME SHALL HAVE BEEN SO MAILED.**

12. **SUBORDINATION OF INDEBTEDNESS**. ANY INDEBTEDNESS OF BORROWER TO GUARANTOR NOW OR HEREAFTER EXISTING IS HEREBY SUBORDINATED TO THE PAYMENT AND PERFORMANCE OF THE GUARANTEED OBLIGATIONS. UNTIL SUCH TIME AS ONE HUNDRED PERCENT (100%) OF THE GUARANTEED OBLIGATIONS SHALL HAVE BEEN SATISFIED OR DISCHARGED, REGARDLESS OF THE AMOUNT OF ANY GUARANTOR'S OBLIGATION TO LENDER HEREUNDER, EACH GUARANTOR IRREVOCABLY WAIVES ANY AND ALL RIGHTS SUCH GUARANTOR MAY HAVE AT ANY TIME (WHETHER ARISING DIRECTLY OR INDIRECTLY, BY OPERATION OF LAW OR CONTRACT) TO ASSERT ANY CLAIM AGAINST BORROWER ON ACCOUNT OF PAYMENTS MADE BY SUCH GUARANTOR UNDER THIS GUARANTY, INCLUDING, WITHOUT LIMITATION, ANY AND ALL RIGHTS OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION OR INDEMNITY. UNTIL SUCH TIME AS ONE HUNDRED PERCENT (100%) OF THE GUARANTEED OBLIGATIONS SHALL HAVE BEEN SATISFIED OR DISCHARGED, REGARDLESS OF THE AMOUNT OF GUARANTOR'S OBLIGATION TO LENDER HEREUNDER, EACH GUARANTOR IRREVOCABLY SUBORDINATES ANY AND ALL GUARANTEED OBLIGATIONS OF BORROWER TO SUCH GUARANTOR, PRESENT AND FUTURE, HOWEVER EVIDENCED, TO THE PRIOR PAYMENT OF THE GUARANTEED OBLIGATIONS TO AGENT AND LENDERS.

13. **Priority of Payments Received**. Any amounts received by Agent and/or any Lender from any source on account of the Loan may be utilized by Agent for the payment of the Guaranteed Obligations and any other obligations of Borrower to Agent and/or any Lender in such order or priority as Agent may from time to time elect.

**14. WAIVER OF RIGHT TO JURY TRIAL. EACH GUARANTOR ACKNOWLEDGES AND AGREES THAT THERE MAY BE A CONSTITUTIONAL RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY CLAIM, DISPUTE OR LAWSUIT ARISING WITH RESPECT TO THIS GUARANTY, BUT THAT SUCH RIGHT MAY BE WAIVED. ACCORDINGLY, EACH GUARANTOR AGREES THAT, NOTWITHSTANDING SUCH CONSTITUTIONAL RIGHT, IN THIS COMMERCIAL MATTER, GUARANTOR BELIEVES AND AGREES THAT IT SHALL BE IN GUARANTOR'S BEST INTEREST TO WAIVE SUCH RIGHT, AND, ACCORDINGLY, HEREBY WAIVES SUCH RIGHT TO A JURY TRIAL, AND FURTHER AGREES THAT**

**THE BEST FORUM FOR HEARING ANY CLAIM, DISPUTE, OR LAWSUIT, IF ANY, ARISING IN CONNECTION WITH THIS GUARANTY OR THE RELATIONSHIP AMONG BORROWER, AGENT, LENDERS, AND GUARANTOR, WHETHER NOW EXISTING OR HEREAFTER ARISING, OR WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, SHALL BE A COURT OF COMPETENT JURISDICTION SITTING WITHOUT A JURY.**

**15. Notices**. Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given: (i) if hand delivered, effective upon receipt, rejection or refusal, or (ii) if delivered by overnight courier service, effective upon receipt, rejection or refusal, or (iii) if mailed by United States registered or certified mail, postage prepaid, return receipt requested, effective upon receipt, rejection or refusal; addressed in each case as follows:

| | |
|---|---|
| Guarantor: | Michael D. Niederst<br>485 N. Keller Road, Suite 520<br>Maitland, Florida 32751<br><br>David B. Niederst<br>22200 Lake Road<br>Rocky River, Ohio 44116 |
| With a copy to: | Kohrman Jackson & Krantz P.L.L.<br>1375 E. Ninth Street, 29th Floor<br>Cleveland, Ohio 44114<br>Attn: Jon J. Pinney, Esq. |
| Lender: | The Huntington National Bank<br>200 Public Square (CM 17)<br>Cleveland, Ohio 44114<br>Attention: Nathan C. Nosal |
| With a copy to: | Walter \| Haverfield LLP<br>The Tower at Erieview<br>1301 E. 9th Street, Suite 3500<br>Cleveland, Ohio 44114<br>Attn: Nathan A. Felker, Esq. |

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

**16. Representations and Warranties**. In order to induce Lenders to make the Loan, and for Agent to act as agent on behalf of Lenders in accordance with the Loan Documents, each Guarantor makes the following representations and warranties to Agent and Lenders. Each Guarantor acknowledges that but for the truth and accuracy of the matters covered by the following representations and warranties, Lenders would not have agreed to make the Loan, and Agent would not have agreed to act as agent on behalf of Lenders in accordance with the Loan Documents.

(a) If Guarantor is an entity, Guarantor is duly formed, validly existing, and in good standing in its state of organization and has qualified to do business and is in good standing in any state in which it is necessary in the conduct of its business.

(b) Any and all balance sheets, net worth statements, and other financial data with respect to Guarantor which have heretofore been given to Agent by or on behalf of Guarantor fairly and accurately present the financial condition of Guarantor as of the respective dates thereof.

(c) The execution, delivery, and performance by Guarantor of this Guaranty does not and will not contravene or conflict with: (i) any laws, order, rule, regulation, writ, injunction or decree now in effect of any Government Authority, or court having jurisdiction over Guarantor, (ii) any contractual restriction binding on or affecting Guarantor or Guarantor's property or assets which may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty, (iii) the instruments creating any trust holding title to any assets included in Guarantor's financial statements, or (iv) the organizational (if applicable) or other documents of Guarantor.

(d) If Guarantor is an entity, Guarantor has all necessary organizational power and authority, as the case may be, to execute, deliver and perform its obligations under this Guaranty; the execution, delivery and performance by Guarantor of this Guaranty have been duly authorized by all necessary organizational action, as the case may be, on its part; and, in any event, this Guaranty has been duly and validly executed and delivered by Guarantor.

(e) No authorizations, approvals or consents of, and no filings or registrations with, any governmental or regulatory authority or agency are necessary for the execution, delivery or performance by Guarantor of this Guaranty or for the validity or enforceability hereof.

(f) This Guaranty creates legal, valid, and binding obligations of Guarantor enforceable in accordance with its terms.

(g) Except as otherwise disclosed in writing to Agent, there is no action, proceeding, or investigation pending or, to the knowledge of Guarantor, threatened or affecting Guarantor, which may adversely affect Guarantor's ability to fulfill Guarantor's obligations under this Guaranty. There are no judgments or orders, in the aggregate, for the payment of money rendered against Guarantor for an amount in excess of $50,000.00. Guarantor is not in default under any agreements which may adversely affect Guarantor's ability to fulfill Guarantor's obligations under this Guaranty.

All of the above representations and warranties are deemed remade upon any extension of the Loan pursuant to the Loan Agreement. Guarantor hereby agrees to indemnify and hold Agent and/or Lenders free and harmless from and against all loss, cost, liability, damage, and expense, including reasonable attorney's fees and costs, which Agent and/or any Lender may sustain by reason of the inaccuracy or breach of any of the foregoing representations and warranties as of the date the foregoing representations and warranties are made and are remade.

**17. Successors and Assigns Bound**. This Guaranty shall be binding upon the heirs, executors, legal and personal representatives, successors and assigns of Guarantor and shall not be discharged in whole or in part by the death of Guarantor. If more than one party executes this Guaranty, the liability of all such parties shall be joint and several.

**18. Delivery of Financial Information.** Guarantor shall deliver or cause to be delivered to Agent all of the Guarantor financial statements to be delivered in accordance with the terms of the Loan Agreement. In addition, upon and during the occurrence of an Event of Default, Guarantor will, promptly after Agent's written request therefor, provide Agent with such other financial information as Agent may request. Guarantor represents and warrants to Agent that all financial statements furnished or to be furnished to Agent with respect to such Guarantor will accurately reflect, in all material respects, such Guarantor's financial condition at the times and for the periods therein stated.

**19. Prohibition on Disposal of Assets.** Guarantor hereby agrees, covenants, represents and warrants that so long as any portion of the Guaranteed Obligations remains outstanding, Guarantor will not give or otherwise transfer or dispose of any material portion of such Guarantor's assets to any other person or entity for less than the reasonably equivalent value of such assets.

**20. GOVERNING LAW. THIS GUARANTY SHALL BE GOVERNED BY, AND EXCEPT TO THE EXTENT PRE-EMPTED BY FEDERAL LAW, CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF OHIO.**

**21. Borrower's Use of Loan Proceeds.** Agent and/or Lenders shall be entitled to honor any request for Loan Proceeds made by Borrower and shall have no obligation to see to the proper disposition of such advances. Guarantor agrees that Guarantor's obligations hereunder shall not be released or affected by reason of any improper disposition by Borrower of such Loan Proceeds.

**22. Patriot Act.** IMPORTANT INFORMATION ABOUT PROCEDURES REQUIRED BY THE USA PATRIOT ACT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each entity or person who opens an account or establishes a relationship with Agent.

*What this means*: When an entity or person opens an account or establishes a relationship with Agent, Agent may ask for the name, address, date of birth, and other information that will allow Agent to identify the entity or person who opens an account or establishes a relationship with Agent. Agent may also ask to see identifying documents for the entity or person.

**23. Amendment Must Be in Writing.** The terms of this Guaranty may be waived, modified or amended only by an instrument in writing duly executed by Guarantor and Agent.

**24. Delay Does Not Operate as Waiver; Time of the Essence.** Neither failure to exercise, nor any delay in exercising, on the part of Agent and/or any Lender, any right or remedy under this Guaranty or any of the Loan Documents shall operate as a waiver, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise or the exercise of any other right or remedy. This Guaranty is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof with respect to Guarantor's performance hereunder.

**25. Payments Made Free and Clear**. All payments under this Guaranty shall be made free and clear of, and without deduction for, any and all present and future taxes, levies or other fees or payments to public authorities of similar nature.

**26. Confession of Judgment/Warrant of Attorney**. The undersigned authorizes any attorney at law to appear in any court of record in the State of Ohio or in any other state or territory of the United States of America after the loan evidenced by this Guaranty becomes due, whether by acceleration or otherwise, to waive the issuing and service of process, and to confess judgment against Guarantor in favor of Agent and/or any Lender for the amount then appearing due on this Guaranty, together with costs of suit, and thereupon to waive all errors and all rights of appeal and stays of execution. The undersigned Guarantor waives any conflict of interest that an attorney hired by Agent and/or any Lender may have in acting on that Guarantor's behalf in confessing judgment against Guarantor while such attorney is retained by Agent and/or such Lender. The undersigned Guarantor expressly consents to such attorney acting for that Guarantor in confessing judgment and to such attorney's fee being paid by Agent and/or such Lender or deducted from the proceeds of collection of this Guaranty or collateral security therefor.

**27. Headings**. The headings or captions of the Articles and Sections in this Guaranty are for convenience only, are not a part of this Guaranty, and are not to be considered when interpreting this Agreement.

**28. Minimum Liquidity**. Guarantor David B. Niederst and Guarantor Michael D. Niederst shall collectively maintain a combined Liquidity of not less than Four Million and 00/100 Dollars ($4,000,000.00). A As used herein, "Liquidity" shall mean the sum of all cash plus the fair market value of all readily marketable securities owned solely by or held solely in the name of each Guarantor (or with respect to Guarantor David B. Niederst, held jointly with his spouse, Adrina Niederst, and with respect to Guarantor Michael B. Niederst, held jointly with his spouse, Melody Niederst) and not subject to any transfer or other restriction or any lien or other encumbrance, except to the extent granted in favor of Lender. Liquidity may also include either Guarantor's prorated interest in liquid assets described in the immediately preceding sentence held in accounts owned by entities in which either Guarantor holds at least 50% of the equity interest in such entity (prorated based on such Guarantor's percentage of ownership in such entity), and which entity is controlled by such Guarantor. For purposes of the immediately preceding sentence, "control" shall mean the power, by virtue of ownership, contract or otherwise, to cause the direction of the management and policies of the applicable entity, including the sole power to disburse funds by said entity. Liquidity shall not include any cash or marketable securities hold in any retirements accounts (e.g., 401K, IRA, Keogh plans, SEP, etc.). Each Guarantor shall deliver to Lender from time to time upon Lender's reasonable request a statement signed by such Guarantor certifying as to Guarantor's Liquidity as of the date of such statement, along with copies of such other information and documents as Lender may reasonably require. Liquidity shall be verified on an annual basis, beginning on December 31, 2021, which shall be tested upon receipt by Lender of the financial information required from each Guarantor under Section 19 above and the Loan Agreement necessary to perform such test, which financial information must be supplied by each Guarantor to Lender within forty-five (45) days after each year end.

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty in Orange County, the State of Florida as of the date first written above.

**GUARANTOR**:

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

**MICHAEL D. NIEDERST**, individually

STATE OF Florida )
) ss:
COUNTY OF Orange. )

This is an acknowledgment clause. No oath or affirmation was administered to the signer.

Before me, a Notary Public in and for said County and State, personally appeared Michael D. Niederst, whose identity was known or proven to me and who did sign the foregoing Instrument and acknowledged the signing hereof to be his voluntary act and deed.

In testimony whereof, I have hereunto set my hand and official seal at Orange County, Florida, this 14th day of March, 2022.

FLORIDA NOTARY ASSOCIATION · SINCE 1978
Renese Johnson
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG305797
Expires 2/25/2023

Notary Public

My commission expires: 02/25/2023

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty in Lee County, the State of FL as of the date first written above.

**GUARANTOR:**

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

______________________________
**DAVID B. NIEDERST,** individually

STATE OF FL )
) ss:
COUNTY OF Lee )

This is an acknowledgment clause. No oath or affirmation was administered to the signer.

Before me, a Notary Public in and for said County and State, personally appeared David B. Niederst, whose identity was known or proven to me and who did sign the foregoing Instrument and acknowledged the signing hereof to be his voluntary act and deed.

In testimony whereof, I have hereunto set my hand and official seal at Fifth Third Bank, __________, this 14th day of March, 2022.

STEFFANY MCGINNIS
Notary Public - State of Florida
Commission # HH 047123
My Comm. Expires Sep 28, 2024

______________________________
Notary Public

My commission expires: 09/28/24

# EXHIBIT 5

# GUARANTY OF PAYMENT

This *Guaranty of Payment* ("Guaranty") made as of the 27th day of December, 2019 (the "Effective Date"), by **MICHAEL D. NIEDERST,** an individual, and **DAVID B. NIEDERST**, an individual (collectively and each, individually, "Guarantor'), to and for the benefit of **THE HUNTINGTON NATIONAL BANK**, a national banking association, its successors and assigns ("Lender").

## RECITALS:

WHEREAS, MWAD Phase II, LLC, a Florida limited liability company (the "Borrower"), and Lender entered into that certain *Loan Agreement* dated on or about the date hereof ("Loan Agreement") concerning the loan (the "Loan") to be made to Borrower in the principal amount of up to Four Million and 00/100 Dollars ($4,000,000.00) pursuant to the terms of the Loan Agreement. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

WHEREAS, in connection with the Loan, Borrower has executed and delivered to The Huntington National Bank, in its capacity as a lender under the Loan Agreement, a Promissory Note in the principal amount of $4,000,000.00 (together with all other Promissory Notes executed by Borrower in connection with the Loan, the "Note"), dated as of the Effective Date, which Note is secured by: (i) the Mortgage made by Borrower in favor of Lender encumbering the Property (as such terms are defined in the Loan Agreement); and (ii) the other Loan Documents (as defined in the Loan Agreement).

WHEREAS, each Guarantor will derive an economic benefit from the Loan evidenced and secured by the Note, the Mortgage and the other Loan Documents.

WHEREAS, Lender has relied on the statements and agreements contained herein in agreeing to make the Loan, and the execution and delivery of this Guaranty by each Guarantor is a condition precedent to the making of the Loan by Lender.

## AGREEMENTS:

NOW, THEREFORE, intending to be legally bound, Guarantor, in consideration of the matters described in the foregoing Recitals, which Recitals are incorporated herein and made a part hereof, and for other good and valuable consideration the receipt and sufficiency of which are acknowledged, hereby covenants and agrees for the benefit of Lender and its respective successors, indorsees, transferees, participants and assigns as follows:

1. **Guaranteed Obligations**. Guarantor absolutely, unconditionally, irrevocably, and jointly and severally guarantees:

(a) the full and prompt payment of the principal of and interest on the Note when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter, as well as the full and prompt payment of any and all of Borrower's liabilities, obligations, and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, lease obligations, liabilities arising under Hedging Contracts, commercial card indebtedness, and any other obligations and liabilities of Borrower to

Lender; whether any such indebtedness is due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether recovery on the indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever (collectively, the "Indebtedness");

(b) the prompt, full and complete performance of all of Borrower's obligations under each and every covenant contained in the Loan Documents; and

(c) the full and prompt payment of any Enforcement Costs (as hereinafter defined in Section 9 hereof).

All amounts due, debts, liabilities and payment obligations described in subsections (a), (b) and (c) of this Section 1 shall be hereinafter collectively referred to as the "Guaranteed Obligations."

**2. Independent Obligations**. In the event Borrower shall fail to pay in full, when due, any of the Guaranteed Obligations, Guarantor agrees, on demand by Lender or the holder of the Note, to pay the Guaranteed Obligations regardless of any defense, right of set-off or claims which Borrower or Guarantor may have against Lender or the holder of the Note. All of the remedies set forth herein and/or provided for in any of the Loan Documents or at law or equity shall be equally available to Lender, and the choice by Lender of one such remedy over another shall not be subject to question or challenge by Guarantor or any other person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding, or counteraction by Lender to recover or seeking any other remedy under this Guaranty, nor shall such choice preclude Lender from subsequently electing to exercise a different remedy. Without limitation to the generality of the foregoing, it is expressly hereby acknowledged and agreed that the obligations of Guarantor hereunder are independent of the obligations of Borrower, Guarantor or any other guarantor or indemnitor under any of the other Loan Documents to which they may be a party, and a separate action or actions may be brought and prosecuted against Guarantor whether or not any action is brought against Borrower, any other guarantor or indemnitor and whether or not Borrower is joined in any such action or actions.

**3. Waiver of Defenses**. Except as prohibited by applicable law, each Guarantor waives any right to require Lender: (a) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Guaranteed Obligations or of any nonpayment related to any Collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Guaranteed Obligations or in connection with the creation of new or additional loans or obligations; (b) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (c) to proceed directly against any Collateral, any other guarantor, or any other person; (d) to give notice of the terms, time, and place of any public or private sale of any personal property Collateral, or to comply with any other applicable provisions of the Uniform Commercial Code; (e) to pursue any other remedy within Lender's power; or (f) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Each Guarantor further agrees to: (a) refrain from asserting, until after repayment in full of the Loan, any defense, right of set-off or other claim which Guarantor may have against Borrower; (b) waive any defense, right of set-off or other claim which Guarantor or Borrower

may have against Lender, or the holder of the Note; (c) waive any and all rights Guarantor may have under any anti-deficiency statute or other similar protections; and (d) waive any failure by Lender to inform Guarantor of any facts Lender may now or hereafter know about Borrower, the Property, the Loan, or the transactions contemplated by the Loan Agreement, it being understood and agreed that Lender has no duty so to inform and that Guarantor is fully responsible for being and remaining informed by Borrower of all circumstances bearing on the risk of nonperformance of Borrower's obligations.

In addition to, and without limitation to, the foregoing waivers, each Guarantor hereby also waives: (a) any right to require Lender, as a condition of payment or performance or completion by any Guarantor, to: (i) proceed against Borrower, any other guarantor, or any other person, (ii) proceed against or exhaust any security held from Borrower, any other guarantor, or any other person, (iii) proceed against or have resort to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person, or (iv) pursue any other remedy in the power of Lender whatsoever; (b) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of Borrower, including, without limitation, any defense based on or arising out of the lack of validity or the unenforceability of the Guaranteed Obligations or any agreement or instrument related thereto or by reason of the cessation of the liability of Borrower from any cause other than payment, performance and completion in full of the Guaranteed Obligations; (c) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty and any legal or equitable discharge of any Guarantor's obligations hereunder (other than indefeasible payment, performance and completion of the Guaranteed Obligations or the Loan in full), (ii) the benefit of any statute of limitations affecting any Guarantor's liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims and (iv) promptness, diligence and any requirement that Lender protect, secure, perfect or insure any security interest or lien or any property subject thereto; (e) any release, discharge, modification, impairment or limitation of the liability of Borrower to Lender, whether consented to by Lender, consensual or arising by operation of law or any proceedings in bankruptcy or reorganization, or from any other cause, other than payment in full of the Loan; (f) any defense based on any rejection or disaffirmance of the Guaranteed Obligations, or any part thereof, or any security held therefor, in any such proceedings in bankruptcy or reorganization; and (g) any defense based on any action taken or omitted by Lender in any proceedings in bankruptcy or insolvency involving Borrower, including any election to have their claim allowed as being secured, partially secured or unsecured, any extension of credit by Lender to Borrower in any proceedings in bankruptcy or insolvency, and taking and holding by Lender of any security for any such extension of credit.

**4. Authorization of Amendments to Loan Documents; Waiver of Right to Notice of Amendment**. The obligations of the undersigned Guarantor under this Guaranty extend to all amendments, supplements, modifications, renewals, replacements or extensions of the Loan Documents and all Hedging Contracts at any rate or rates of interest. The liability of Guarantor and the rights of Lender under this Guaranty will not be impaired or affected in any manner by, and each Guarantor hereby consents in advance to, and waives any requirement of notice for, any: (1) disposition, impairment, release, surrender, substitution, or modification of any Collateral or the obligations created by this Guaranty or failure to perfect a security interest in any Collateral; (2) release (including adjudication or discharge in bankruptcy) or settlement

with Borrower or any other party which may be or become liable for the Guaranteed Obligations (including, without limitation, any maker, indorser, guarantor or surety); (3) delay in enforcement of payment of the Guaranteed Obligations or delay in enforcement of this Guaranty; (4) delay, omission, waiver, or forbearance in exercising any right or power with respect to the Guaranteed Obligations or this Guaranty; (5) defense arising from the enforceability, validity or genuineness of any of the Loan Documents; (6) defenses or counterclaims that Borrower may assert under or in respect of any of the Loan Documents, including, but not limited to, failure of consideration, fraud, payment, statute of frauds, bankruptcy, statute of limitations, lender liability, accord and satisfaction and usury; or (7) other act or omission which might otherwise constitute a legal or equitable discharge of the undersigned. Guarantor acknowledges that no representations of any kind whatsoever have been made by Lender. No modification or waiver of any of the provisions of this Guaranty shall be binding upon Lender except as expressly set forth in a writing duly signed and delivered by Lender.

Further, and without limitation to the foregoing, Lender, upon such terms as it deems appropriate, without notice or demand and without affecting the validity or enforceability of this Guaranty or giving rise to any reduction, limitation, impairment, discharge or termination of the Guarantor's liability hereunder, from time to time may: (i) renew, extend, accelerate, increase the rate of interest on, or otherwise change the time, place, manner or terms of payment or performance under the Loan Documents, (ii) settle, compromise, release or discharge, or accept or refuse any offer of performance with respect to, or substitutions for, the Guaranteed Obligations and/or the Loan Documents, and/or subordinate the payment of the same to the payment of any other obligations; (iii) request and accept other guaranties of any of Borrower's obligations under the Loan Documents and take and hold security for the payment or performance of this Guaranty or the Loan Documents; (iv) release, surrender, exchange, substitute, compromise, settle, rescind, waive, alter, subordinate or modify, with or without consideration, any security for payment or performance of Borrower's obligations under the Loan Documents, any other guaranties of the Loan, or any other obligation of any person (including any other guarantor) with respect to the Loan; (v) enforce and apply any security now or hereafter held by or for the benefit of Lender in respect of this Guaranty or the Loan and direct the order or manner of sale thereof, and to bid at any such sale, or exercise any other right or remedy that Lender may have against any such security, in each case as in its discretion it may determine, including foreclosure on any such security pursuant to one or more judicial or non-judicial sales, even though such action operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Guarantor against Borrower or any security for the Guaranteed Obligations; (vi) apply any payments or recoveries from Borrower, Guarantor or any other source, and any proceeds of any security, to the Guaranteed Obligation in such manner, order and priority as Lender may elect (whether or not those obligations are guaranteed by this Guaranty or secured at the time of the application); and (vii) exercise any other rights available to it under the Loan Documents.

Lender may take any of the foregoing actions upon any terms and conditions as Lender may elect, without giving notice to, or obtaining consent from, Guarantor and without affecting the liability of any Guarantor to Lender and this Guaranty and the obligations of Guarantor hereunder shall be valid and enforceable and shall not be subject to any reduction, limitation, impairment, discharge or termination for any reason.

Guarantor further agrees that Guarantor's liability as guarantor shall not be impaired or affected by any renewals or extensions which may be made from time to time, with or without the knowledge or consent of Guarantor of the time for payment of interest or principal under the Note, it being the intent hereof that, subject to Lender's compliance with the terms of this Guaranty, Guarantor shall remain liable for the payment of the Guaranteed Obligations, until the Guaranteed Obligations has been paid in full, notwithstanding any act or thing which might otherwise operate as a legal or equitable discharge of a surety. Guarantor further understands and agrees that Lender may at any time enter into agreements with Borrower to amend and modify the Note, Loan Agreement, Mortgage or other Loan Documents, and may waive or release any provision or provisions of the Note, Loan Agreement, Mortgage and other Loan Documents or any thereof, and, with reference to such instruments, may make and enter into any such agreement or agreements as Lender and Borrower may deem proper and desirable, without in any manner impairing or affecting this Guaranty or any of Lender's rights hereunder or Guarantor's obligations hereunder.

**5. Guaranty of Payment and Not of Collection**. This is an absolute, present and continuing guaranty of payment and not of collection. Guarantor agrees that this Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any other security or Collateral given in connection herewith or with the Note, Loan Agreement, Mortgage or any of the other Loan Documents through foreclosure or sale proceedings, as the case may be, under the Mortgage or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right. Guarantor further agrees that nothing contained herein or otherwise shall prevent Lender from pursuing concurrently or successively all rights and remedies available to it at law and/or in equity or under the Note, Loan Agreement, Mortgage or any other Loan Documents, and the exercise of any of its rights or the completion of any of its remedies shall not constitute a discharge of Guarantor's obligations hereunder, it being the purpose and intent of Guarantor that the obligations of Guarantor hereunder shall be absolute, independent and unconditional under any and all circumstances whatsoever and Guarantor shall remain fully liable for the payment and performance of all of the Guaranteed Obligations until the Loan and all Guaranteed Obligations have been indefeasibly paid and performed in full. None of Guarantor's obligations under this Guaranty or any remedy for the enforcement thereof shall be impaired, modified, changed or released in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Borrower under the Note, Loan Agreement, Mortgage or other Loan Documents or by reason of the bankruptcy of Borrower or by reason of any creditor or bankruptcy proceeding instituted by or against Borrower. In the event of the foreclosure of the Mortgage and of a deficiency, Guarantor hereby promises and agrees forthwith to pay the amount of such deficiency notwithstanding the fact that recovery of said deficiency against Borrower would not be allowed by applicable law; however, the foregoing shall not be deemed to require that Lender institute foreclosure proceedings or otherwise resort to or exhaust any other Collateral or security prior to or concurrently with enforcing this Guaranty. As used in this Guaranty, an "indefeasible" payment shall mean and refer to a payment that is no longer subject to potential disaffirmance, impairment, set aside, offset, recoupment, defeasance, recovery, disallowance, or recapture pursuant to the provisions of any federal or state law, regulation or order applicable to or governing creditors' rights, including, without limitation, Title 11 of the United States Code, as amended, either by reason of the passage of time following such payment or the final judgment of a court of competent

jurisdiction establishing the unassailable right of the party receiving such payment to retain such payment without reduction, offset, or other impairment.

6. **Reinstatement**. If and to the extent that, for any reason, any payment (or portion thereof) by or on behalf of Borrower or Guarantor in respect of the Guaranteed Obligations is rescinded or must be otherwise restored by Lender or any holder of the Guaranteed Obligations, whether as a result of any proceedings in bankruptcy or insolvency, the appointment of a receiver, intervenor, conservator, trustee or similar officer for Borrower, or otherwise, then the obligations of Guarantor shall be automatically reinstated and will continue to be effective as though such payment had not been made regardless of whether Lender contested the order requiring return of such payment. Guarantor agrees that it will indemnify Lender on demand for all costs and expenses (including, without limitation, fees and expenses of counsel) incurred by Lender in connection with such rescission or restoration, including any such costs and expenses incurred in defending against any claim alleging that such payment constituted a preference, fraudulent transfer or similar payment under any bankruptcy, insolvency or similar law.

7. **Lender's Right to Assign Loan Documents and Guaranty**. In the event Lender or any holder of the Note shall assign the Note and this Guaranty, Guarantor will accord full recognition thereto and agrees that all rights and remedies of Lender or such holder hereunder shall be enforceable against Guarantor by such assignee with the same force and effect and to the same extent as would have been enforceable by Lender or such holder but for such assignment; provided, however, that unless Lender shall otherwise consent in writing, Lender shall have an unimpaired right, prior and superior to that of its assignee or transferee, to enforce this Guaranty for Lender's benefit to the extent any portion of the Guaranteed Obligations or any interest therein is not assigned or transferred.

8. **Lender's Right of Set-Off.** If an Event of Default shall occur, Lender shall have the right, in addition to all other rights and remedies available to it, to set-off against and to appropriate and apply to the unpaid balance of the Guaranteed Obligations any debt owing to, and any other funds held in any manner for the account of, Guarantor by Lender, including without limitation all funds in all deposit accounts (general or special) now or hereafter maintained by Guarantor with Lender (excluding, however, all IRA, Keogh, and trust accounts). Such right shall exist whether or not Lender shall have made any demand under this Guaranty or any such participation or any other Loan Document and whether or not the Guaranteed Obligations are matured or unmatured. Guarantor hereby confirms the foregoing arrangements and each such holder's and Lender's right of banker's lien and set-off, and nothing in this Guaranty or any other Loan Document shall be deemed any waiver or prohibition of any such holder's or of Lender's right of banker's lien or set-off.

9. **Liability for Enforcement Costs**. Guarantor agrees to pay all costs, expenses (including reasonable attorneys' fees), and disbursements incurred by Lender on Borrower's behalf (a) in all efforts made to enforce this Guaranty, (b) in connection with modifying or amending this Guaranty, (c) in enforcing and foreclosing on Lender's security interest in any Collateral or possession of any premises containing any Collateral, whether through judicial proceedings or otherwise, (d) in defending or prosecuting any actions or proceedings arising out of or relating to Lender's transactions with Guarantor, or (e) in connection with any advice given to Lender with respect to its rights and obligations under this Guaranty and all related agreements. Expenses being reimbursed by Guarantor under this section include costs and

expenses incurred in connection with: (t) appraisals and insurance reviews; (u) environmental examinations and reports; (v) field examinations and the preparation of reports based thereon; (w) the fees charged by a third party retained by Lender or the internally allocated fees for each Person employed by Lender with respect to each field examination; (x) taxes, fees and other charges for (i) lien and title searches and (ii) the recording of any mortgages, filing of any financing statements and continuations, and other actions to perfect, protect, and continue Lender's security interests; (z) sums paid or incurred to take any action required of Borrower under the Loan Documents that Borrower fails to pay or take; and (aa) forwarding loan proceeds, collecting checks and other items of payment, and costs and expenses of preserving and protecting the Collateral (all of which are referred to herein as "Enforcement Costs"). Guarantor shall pay to Lender upon demand all Enforcement Costs incurred in connection therewith, in addition to all other amounts due hereunder, regardless of whether all or a portion of such Enforcement Costs are incurred in a single proceeding brought to enforce this Guaranty as well as the other Loan Documents.

**10. Severability; Partial Invalidity**. Lender and Guarantor intend and believe that each provision in this Guaranty comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Guaranty is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Guaranty to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Guaranty shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Lender or the holder of the Note under the remainder of this Guaranty shall continue in full force and effect.

**11. WAIVER OF MARSHALLING; JURISDICTION. TO THE GREATEST EXTENT PERMITTED BY LAW, EACH GUARANTOR HEREBY WAIVES ANY AND ALL RIGHTS TO REQUIRE MARSHALLING OF ASSETS BY LENDER. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS RELATING TO THIS GUARANTY (EACH, A "PROCEEDING"), LENDER AND EACH GUARANTOR IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE CITY OF CLEVELAND AND STATE OF OHIO; AND (B) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. NOTHING IN THIS GUARANTY SHALL PRECLUDE LENDER FROM BRINGING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION. LENDER AND GUARANTOR FURTHER AGREE AND CONSENT THAT, IN ADDITION TO ANY METHODS OF SERVICE OF PROCESS PROVIDED FOR UNDER APPLICABLE LAW, ALL SERVICE OF PROCESS IN ANY PROCEEDING IN ANY STATE OR UNITED**

**STATES COURT SITTING IN THE CITY OF CLEVELAND AND MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO THE APPLICABLE PARTY AT THE ADDRESS INDICATED BELOW, AND SERVICE SO MADE SHALL BE COMPLETE UPON RECEIPT; EXCEPT THAT IF SUCH PARTY SHALL REFUSE TO ACCEPT DELIVERY, SERVICE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME SHALL HAVE BEEN SO MAILED.**

12. **SUBORDINATION OF INDEBTEDNESS**. ANY INDEBTEDNESS OF BORROWER TO GUARANTOR NOW OR HEREAFTER EXISTING IS HEREBY SUBORDINATED TO THE PAYMENT AND PERFORMANCE OF THE GUARANTEED OBLIGATIONS. UNTIL SUCH TIME AS ONE HUNDRED PERCENT (100%) OF THE GUARANTEED OBLIGATIONS SHALL HAVE BEEN SATISFIED OR DISCHARGED, REGARDLESS OF THE AMOUNT OF ANY GUARANTOR'S OBLIGATION TO LENDER HEREUNDER, EACH GUARANTOR IRREVOCABLY WAIVES ANY AND ALL RIGHTS SUCH GUARANTOR MAY HAVE AT ANY TIME (WHETHER ARISING DIRECTLY OR INDIRECTLY, BY OPERATION OF LAW OR CONTRACT) TO ASSERT ANY CLAIM AGAINST BORROWER ON ACCOUNT OF PAYMENTS MADE BY SUCH GUARANTOR UNDER THIS GUARANTY, INCLUDING, WITHOUT LIMITATION, ANY AND ALL RIGHTS OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION OR INDEMNITY. UNTIL SUCH TIME AS ONE HUNDRED PERCENT (100%) OF THE GUARANTEED OBLIGATIONS SHALL HAVE BEEN SATISFIED OR DISCHARGED, REGARDLESS OF THE AMOUNT OF GUARANTOR'S OBLIGATION TO LENDER HEREUNDER, EACH GUARANTOR IRREVOCABLY SUBORDINATES ANY AND ALL GUARANTEED OBLIGATIONS OF BORROWER TO SUCH GUARANTOR, PRESENT AND FUTURE, HOWEVER EVIDENCED, TO THE PRIOR PAYMENT OF THE GUARANTEED OBLIGATIONS TO LENDER

13. **Priority of Payments Received**. Any amounts received by Lender from any source on account of the Loan may be utilized by Lender for the payment of the Guaranteed Obligations and any other obligations of Borrower to Lender in such order or priority as Lender may from time to time elect.

**14. WAIVER OF RIGHT TO JURY TRIAL. EACH GUARANTOR ACKNOWLEDGES AND AGREES THAT THERE MAY BE A CONSTITUTIONAL RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY CLAIM, DISPUTE OR LAWSUIT ARISING WITH RESPECT TO THIS GUARANTY, BUT THAT SUCH RIGHT MAY BE WAIVED. ACCORDINGLY, EACH GUARANTOR AGREES THAT, NOTWITHSTANDING SUCH CONSTITUTIONAL RIGHT, IN THIS COMMERCIAL MATTER, GUARANTOR BELIEVES AND AGREES THAT IT SHALL BE IN GUARANTOR'S BEST INTEREST TO WAIVE SUCH RIGHT, AND, ACCORDINGLY, HEREBY WAIVES SUCH RIGHT TO A JURY TRIAL, AND FURTHER AGREES THAT THE BEST FORUM FOR HEARING ANY CLAIM, DISPUTE, OR LAWSUIT, IF ANY, ARISING IN CONNECTION WITH THIS GUARANTY OR THE RELATIONSHIP AMONG BORROWER, LENDER, AND GUARANTOR, WHETHER NOW EXISTING OR HEREAFTER ARISING, OR WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, SHALL BE A COURT OF COMPETENT JURISDICTION SITTING WITHOUT A JURY.**

**15. Notices**. Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given: (i) if hand delivered, effective upon receipt, rejection or refusal, or (ii) if delivered by overnight courier service, effective upon receipt, rejection or refusal, or (iii) if mailed by United States registered or certified mail, postage prepaid, return receipt requested, effective upon receipt, rejection or refusal; addressed in each case as follows:

| | |
|---|---|
| Guarantor: | Michael D. Niederst<br>151 Southhall Lane, Suite 150<br>Maitland, Florida 32751 |
| | David B. Niederst<br>22200 Lake Road<br>Rocky River, Ohio 44116 |
| With a copy to: | Kohrman Jackson & Krantz P.L.L.<br>1375 E. Ninth Street, 29th Floor<br>Cleveland, Ohio 44114<br>Attn: Matthew Viola, Esq. |
| Lender: | The Huntington National Bank<br>200 Public Square (CM 17)<br>Cleveland, Ohio 44114<br>Attention: Nathan C. Nosal |
| With a copy to: | Walter \| Haverfield LLP<br>The Tower at Erieview<br>1301 E. 9th Street, Suite 3500<br>Cleveland, Ohio 44114<br>Attn: Nathan A. Felker, Esq. |

or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

**16. Representations and Warranties**. In order to induce Lender to make the Loan, each Guarantor makes the following representations and warranties to Lender set forth in this Section. Each Guarantor acknowledges that but for the truth and accuracy of the matters covered by the following representations and warranties, Lender would not have agreed to make the Loan.

(a) If Guarantor is an entity, Guarantor is duly formed, validly existing, and in good standing in its state of organization and has qualified to do business and is in good standing in any state in which it is necessary in the conduct of its business.

(b) Any and all balance sheets, net worth statements, and other financial data with respect to Guarantor which have heretofore been given to Lender by or on behalf of Guarantor fairly and accurately present the financial condition of Guarantor as of the respective dates thereof.

(c) The execution, delivery, and performance by Guarantor of this Guaranty does not and will not contravene or conflict with: (i) any laws, order, rule, regulation, writ, injunction or decree now in effect of any Government Authority, or court having jurisdiction over Guarantor, (ii) any contractual restriction binding on or affecting Guarantor or Guarantor's property or assets which may adversely affect Guarantor's ability to fulfill its obligations under this Guaranty, (iii) the instruments creating any trust holding title to any assets included in Guarantor's financial statements, or (iv) the organizational (if applicable) or other documents of Guarantor.

(d) If Guarantor is an entity, Guarantor has all necessary organizational power and authority, as the case may be, to execute, deliver and perform its obligations under this Guaranty; the execution, delivery and performance by Guarantor of this Guaranty have been duly authorized by all necessary organizational action, as the case may be, on its part; and, in any event, this Guaranty has been duly and validly executed and delivered by Guarantor.

(e) No authorizations, approvals or consents of, and no filings or registrations with, any governmental or regulatory authority or agency are necessary for the execution, delivery or performance by Guarantor of this Guaranty or for the validity or enforceability hereof.

(f) This Guaranty creates legal, valid, and binding obligations of Guarantor enforceable in accordance with its terms.

(g) Except as otherwise disclosed in writing to Lender, there is no action, proceeding, or investigation pending or, to the knowledge of Guarantor, threatened or affecting Guarantor, which may adversely affect Guarantor's ability to fulfill Guarantor's obligations under this Guaranty. There are no judgments or orders, in the aggregate, for the payment of money rendered against Guarantor for an amount in excess of $50,000.00. Guarantor is not in default under any agreements which may adversely affect Guarantor's ability to fulfill Guarantor's obligations under this Guaranty.

All of the above representations and warranties are deemed remade upon any extension of the Loan pursuant to the Loan Agreement. Guarantor hereby agrees to indemnify and hold Lender free and harmless from and against all loss, cost, liability, damage, and expense, including reasonable attorney's fees and costs, which Lender may sustain by reason of the inaccuracy or breach of any of the foregoing representations and warranties as of the date the foregoing representations and warranties are made and are remade.

**17. Successors and Assigns Bound**. This Guaranty shall be binding upon the heirs, executors, legal and personal representatives, successors and assigns of Guarantor and shall not be discharged in whole or in part by the death of Guarantor. If more than one party executes this Guaranty, the liability of all such parties shall be joint and several.

**18. Delivery of Financial Information**. Guarantor shall deliver or cause to be delivered to Lender all of the Guarantor financial statements to be delivered in accordance with the terms of the Loan Agreement. In addition, upon and during the occurrence of an Event of Default, Guarantor will, promptly after Lender's written request therefor, provide Lender with such other financial information as Lender may request. Guarantor represents and warrants to

Lender that all financial statements furnished or to be furnished to Lender with respect to such Guarantor will accurately reflect, in all material respects, such Guarantor's financial condition at the times and for the periods therein stated.

19. **Prohibition on Disposal of Assets**. Guarantor hereby agrees, covenants, represents and warrants that so long as any portion of the Guaranteed Obligations remains outstanding, Guarantor will not give or otherwise transfer or dispose of any material portion of such Guarantor's assets to any other person or entity for less than the reasonably equivalent value of such assets.

**20. GOVERNING LAW. THIS GUARANTY SHALL BE GOVERNED BY, AND EXCEPT TO THE EXTENT PRE-EMPTED BY FEDERAL LAW, CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF OHIO.**

21. **Borrower's Use of Loan Proceeds**. Lender shall be entitled to honor any request for Loan Proceeds made by Borrower and shall have no obligation to see to the proper disposition of such advances. Guarantor agrees that Guarantor's obligations hereunder shall not be released or affected by reason of any improper disposition by Borrower of such Loan Proceeds.

22. **Patriot Act**. IMPORTANT INFORMATION ABOUT PROCEDURES REQUIRED BY THE USA PATRIOT ACT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each entity or person who opens an account or establishes a relationship with Lender.

*What this means*: When an entity or person opens an account or establishes a relationship with Lender, Lender may ask for the name, address, date of birth, and other information that will allow Lender to identify the entity or person who opens an account or establishes a relationship with Lender. Lender may also ask to see identifying documents for the entity or person.

23. **Amendment Must Be in Writing**. The terms of this Guaranty may be waived, modified or amended only by an instrument in writing duly executed by Guarantor and Lender.

24. **Delay Does Not Operate as Waiver; Time of the Essence**. Neither failure to exercise, nor any delay in exercising, on the part of Lender, any right or remedy under this Guaranty or any of the Loan Documents shall operate as a waiver, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise or the exercise of any other right or remedy. This Guaranty is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof with respect to Guarantor's performance hereunder.

25. **Payments Made Free and Clear**. All payments under this Guaranty shall be made free and clear of, and without deduction for, any and all present and future taxes, levies or other fees or payments to public authorities of similar nature.

26. **Warrant of Attorney**. The undersigned authorizes any attorney at law to appear in any court of record in the State of Ohio or in any other state or territory of the United States of America after the loan evidenced by this Guaranty becomes due, whether by acceleration or


Electronically Filed 08/17/2026 11:08 / / CV 26 144792 / Confirmation Nbr. 3948510 / CLEV1

otherwise, to waive the issuing and service of process, and to confess judgment against Guarantor in favor of Lender for the amount then appearing due on this Guaranty, together with costs of suit, and thereupon to waive all errors and all rights of appeal and stays of execution. The undersigned Guarantor waives any conflict of interest that an attorney hired by Lender may have in acting on that Guarantor's behalf in confessing judgment against Guarantor while such attorney is retained by Lender. The undersigned Guarantor expressly consents to such attorney acting for that Guarantor in confessing judgment and to such attorney's fee being paid by Lender or deducted from the proceeds of collection of this Guaranty or collateral security therefor.

**27. Headings**. The headings or captions of the Articles and Sections in this Guaranty are for convenience only, are not a part of this Guaranty, and are not to be considered when interpreting this Agreement.

**28. Minimum Liquidity**. Guarantor David B. Niederst and Guarantor Michael D. Niederst shall collectively maintain a combined Liquidity of not less than Five Million and 00/100 Dollars ($5,000,000.00). As used herein, "Liquidity" shall mean the sum of all cash plus the fair market value of all readily marketable securities owned solely by or held solely in the name of each Guarantor (or with respect to Guarantor David B. Niederst, held jointly with his spouse, Adrina Niederst) and not subject to any transfer or other restriction or any lien or other encumbrance, except to the extent granted in favor of Lender. Liquidity may also include either Guarantor's prorated interest in liquid assets described in the immediately preceding sentence held in accounts owned by entities in which either Guarantor holds at least 50% of the equity interest in such entity (prorated based on such Guarantor's percentage of ownership in such entity), and which entity is controlled by such Guarantor. For purposes of the immediately preceding sentence, "control" shall mean the power, by virtue of ownership, contract or otherwise, to cause the direction of the management and policies of the applicable entity, including the sole power to disburse funds by said entity. Liquidity shall not include any cash or marketable securities hold in any retirements accounts (e.g., 401K, IRA, Keogh plans, SEP, etc.). Each Guarantor shall deliver to Lender from time to time upon Lender's reasonable request a statement signed by such Guarantor certifying as to Guarantor's Liquidity as of the date of such statement, along with copies of such other information and documents as Lender may reasonably require. Liquidity shall be verified no less often than as of the end of each fiscal quarter, beginning on December 31, 2019, which shall be tested upon receipt by Lender of the financial information required from each Guarantor under Section 18 above and the Loan Agreement necessary to perform such test, which financial information must be supplied by each Guarantor to Lender within forty-five (45) days after each fiscal quarter end.

*[Remainder of page intentionally left blank; signature pages follow.]*

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty in Orange County, the State of Florida as of the date first written above.

**GUARANTOR:**

**WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

______________________________

**MICHAEL D. NIEDERST,** individually

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty in Cuyahoga County, the State of Ohio as of the date first written above.

**GUARANTOR**:

| |
|---|
| **WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.** |

**DAVID B. NIEDERST**, individually